IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JEFF MOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 121-068 |
| | ) | |
| TIMOTHY C. WARD, et. al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     SCREENING OF THE AMENDED COMPLAINT**

   **A.     BACKGROUND**

Plaintiff names as Defendants: (1) Timothy C. Ward, (2) Edward Philbin, (3) Mr. Paschal, (4) Mr. Harmon, (5) Mary Alston, (6) Mr. Screws, (7) Joy Johnson, (8) Doctor Sharon Gray, (9) Ruthie Shelton, (10) Ms. Kitchen, (11) Ms. Champion, (12) Ms. Blue, (13) Ms. Wiggs, (14) Lieutenant Ms. Jordan, (15) Mr. Mickens, (16) Tomeka Simpson Dumas, (17) Ms. Daniel, (18) Ms. King, and (19) Ms. Leverett. Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

The primary thrust of the complaint is that Plaintiff does not receive sufficient numbers of glucose tablets and "diet snacks," both of which are prescribed to Plaintiff in order to maintain a constant blood sugar level because he is hypoglycemic. Plaintiff arrived at ASMP on July 7, 2020 and was immediately placed in quarantine for COVID-19 until July 31, 2020. (Doc. no. 10, p. 9, ¶¶ 1, 10.) While in quarantine, Plaintiff did not receive an unspecified number of daily diet snacks because Defendant Mickens allowed inmates from other dorms to distribute the snacks, and those inmates would steal some of the snacks intended for Plaintiff. (Id. at ¶ 4.) Plaintiff speculates Defendant Mickens either allowed the thefts to occur or was too lazy to stop them. (Id.) Plaintiff also alleges he received an inadequate number of glucose tablets during this time, though he does not attribute responsibility to a specific party. (Id. at ¶¶ 2-8.) Because of low blood sugar levels due to an inadequate amount of diet snacks and glucose tablets, Plaintiff suffered seizures and fainted on July 8 and 10, 2020. (Id. at ¶¶ 6, 7.) Plaintiff informed Defendants Shelton, Philbin, Wiggs, Dumas, Alston, and Gray about the inadequate amount of glucose tablets and diet snacks while in quarantine. (Id. at ¶ 8; see id. at p. 4.)

Plaintiff continued to have difficulty receiving diet snacks upon his admission to Dorm 12-B-1 on July 31, 2020. (Id. at p. 9, ¶¶ 10-11.) The inmates responsible for distributing the diet snacks stole them. (Id.) Often, the diet snacks would not be delivered from the kitchen to the dorm for distribution, and sometimes the dorm would mistakenly receive snacks intended for other dorms. (Id.) Plaintiff asked Defendants Mickens and Harmon to call the kitchen and inquire when the snacks did not arrive, but both refused, stating they were busy and had enough to do without inquiring about snacks. (Id. at ¶ 12.) On August 12, 2020, Plaintiff did not receive his morning diet snack and fainted despite eating ten glucose tablets, resulting in serious injuries.

(Id. at p. 10, ¶ 13.) Plaintiff states without explanation that Defendants Champion and Blue, who work in food service, are culpable for his situation along with the already mentioned defendants. (Id. ¶ 14.)

Plaintiff believes his inability to receive an Ensure drink on August 11, 2020 contributed to his fainting incident on August 12, 2020. (Id. ¶¶ 15.) On August 10, 2020, Defendant Alston cut off Plaintiff's supply of Ensure drinks to retaliate against Plaintiff for filing a lawsuit against the Department of Corrections. (Id.) At an unclear time, Plaintiff sought a new prescription for Ensure drinks. (Id. at ¶ 16.) Defendant Johnson, a dietitian, told Plaintiff she stopped prescribing Ensure drinks to Plaintiff because of his weight and dietary needs, though Plaintiff suspects Defendant Johnson was also retaliating against Plaintiff for filing a lawsuit. (Id. ¶¶ 15-16.) Similarly, Plaintiff believes that Defendant Gray cut his glucose tablet prescription from ten tablets a day to three tablets a day in retaliation for the lawsuit. (Id. at p. 11, ¶ 20.) Plaintiff provides no further support for these retaliation claims other than the bare accusation itself.

After describing the events of August 2020, Plaintiff lays out a variety of grievances relating to the prison staff, glucose tablets, diet snacks, and retaliation for filing a lawsuit. Defendant Blue distributes diet snacks by giving them to a "crack head" who then steals the snacks. (Id. at ¶¶ 17-18.) Plaintiff showed the food service staff the problems with the distribution system, but they did not change the system. Food service assured Plaintiff he would be getting his snacks, but the snacks would not come. (Id. at pp. 11, 14, ¶¶ 17-18, 37.) Plaintiff was also told to see medical when he had a blood sugar issue. (Id. at p. 11, ¶ 19.) Plaintiff's blood sugar dropped quickly on December 31, 2020, so he went to Defendant Harmon in medical, who knew Plaintiff was hypoglycemic. (Id. at ¶ 19.) Defendant Harmon told Plaintiff

3

to return to his dorm and come back when he had a sick call.  As a result, Plaintiff suffered from low blood sugar, confusion, and a brain injury.

On January 29, 2021, Plaintiff moved to "the hole" and continued to receive fewer diet snacks than he believed necessary.  (Id. at ¶ 21.)  He wrote admittedly profane letters to Defendant Johnson to spur action, but Plaintiff does not state if Defendant Johnson replied.  (Id.)  At an unspecified time, Plaintiff told Defendant Screws to ask the kitchen for more diet snacks.  (Id. at ¶ 35.)  Presumably in response to the letter to Defendant Johnson, Defendant Paschal took Plaintiff to medical, which led other inmates to think Plaintiff was "being a snitch."  (Id. at p. 12, ¶ 27.)  Plaintiff accuses Defendants Paschal and Johnson of trying to incite a riot and endanger Plaintiff by taking him to medical in view of fellow inmates in retaliation for his letters to Defendant Johnson.  (Id. at ¶¶ 28-30.)

The rest of Plaintiff's complaint involves claims unrelated to Plaintiff's health concerns.  On February 2, 2021, Plaintiff was preparing to transfer to another cell, but his property, including a brief for court, was moved without him.  (Id. at p. 13, ¶ 34.)  Plaintiff believes this was a plot between Defendant Philbin and the judge hearing his case.  (Id.)

On February 28, 2021, Defendant Screws visited Plaintiff in "the hole."  (Id. at ¶ 33.)  Plaintiff previously filed a grievance against Defendant Screws, and Defendant Screws broke protocol when entering the cell and threatened Plaintiff with violence if Plaintiff filed another grievance.  (Id.)

At an unspecified time while Plaintiff was in "the hole," Plaintiff tried to file a complaint against a fellow inmate Petey who threatened him.  (Id. at pp. 11-12, ¶¶ 12-27.)  On March 8, 2021, Plaintiff left the hole and returned to the dorms where he remained in fear of Petey.  (Id. at

4

p. 13, ¶ 30.) He asked Defendant Philbin to transfer Petey, who had AIDS, in segregation. Defendant then accuses Philbin and Paschal of recklessly housing Willie McGriff, though Plaintiff does not explain who that is in relation to Petey. (Id.)

On April 13, 2021, the day after Plaintiff filed the original complaint in this case, he received a disciplinary report dated March 30, 2021. (Id. at ¶ 35.) Plaintiff accuses Defendant Shelton of lying in the report, which resulted in a hearing where Plaintiff had no advocate and no ability to confront witnesses or evidence against him. (Id.).

When applying for a digital book reader as a disability accommodation, Defendant Philbin denied Plaintiff's request because Plaintiff's vision was not poor enough to qualify for the reader. (Id. at p. 14, ¶ 38.) However, Plaintiff has seen other inmates with better vision obtain book readers. (Id.)

Plaintiff seeks money damages of $450,000, a permanent injunction to stop retaliation, a change in the diet snack distribution method, and a segregation order for Willie McGriff. (Doc. no. 10, p. 16.)

    **B.    DISCUSSION**

        **1.    Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson

v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

The court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Dismissal is Warranted Because Plaintiff Failed to Truthfully Disclose His Prior Filing History

The form complaint Plaintiff used to commence this case the "Complaint for Violation of Civil Rights," requires that prisoner plaintiffs disclose: (1) whether they have had a case dismissed because of the "three strikes rule,"; (2) whether they have begun other lawsuits in state or federal court dealing with the same facts involved in the current action; (3) whether they have brought any lawsuits in state or federal court relating to the conditions of their confinement; and (4) the disposition of any such lawsuits. (Doc. no. 10, pp. 23-26.) If there is more than one such lawsuit, the additional lawsuits must be described on another piece of paper. (Id. at 24-25.)

Here, pursuant to Federal Rule of Civil Procedure 11 and under penalty of perjury, Plaintiff disclosed a total of two cases in his complaint: Moss v. Knox, 5:15-CV-010 (M.D. Ga. Mar. 8, 2018) and Moss v. Ga. Dept. of Corr., 6:19-CV-020 (S.D. Ga. Jan. 12, 2021). (Doc. no. 10, pp. 24-26.) Plaintiff did not honestly describe the disposition of Moss v. Ga. Dept. of Corr. He states the case ended once he filed a motion to dismiss, (doc. no. 10, p. 25), when in fact the Court dismissed his case on the merits. Moss v. Ga. Dept. of Corr., 6:19-CV-020, doc. no. 26 (S.D. Ga. Jan. 12, 2020) (dismissed for failure to state a claim). Additionally, the Court is aware of several other cases Plaintiff filed which he failed to disclose.

In 2016, Plaintiff filed Moss v. Monroe Cnty. Sheriff's Dept., 1:16-CV-068 (N.D. Ga. May 20, 2016), which the Court transferred to the Middle District of Georgia as Moss v. Monroe Cnty, 5:16-CV-185 (M.D. Ga. July 5, 2016). Afterwards, Plaintiff filed a new case Moss v. Wilson, 5:16-CV-194 (M.D. Ga. June 23, 2016). The Court in the Middle District

7

of Georgia consolidated Wilson and Monroe Cnty. into Knox.  Although Plaintiff disclosed Knox, his complaint made no mention of these related cases.  (See doc. no. 10, p. 24 (listing only Knox).)

In 2018, Plaintiff filed the case Moss v. Does, CV 5:18-CV-430 (M.D. Ga. Dec. 3, 2018).  Plaintiff's complaint was styled as a letter but written like a lawsuit.  (See Id. at doc. no. 1.)  Plaintiff then wrote to the Clerk to decline to open a case, and the Clerk docketed his request as a voluntary dismissal.  (Id. at doc. no. 5.)

Last, in 2020, Plaintiff filed and then voluntarily dismissed Moss v. Ga. Dept. of Corr, 5:20-CV-180 (M.D. Ga. July 1, 2020), in favor of pursuing his claim via a motion in the same-named case in the Southern District.  (Id. at doc. nos. 1, 6); Moss v. Ga. Dept. of Corr., 6:19-CV-020, doc. nos. 21-22 (S.D. Ga. June 16, 2021).

The Eleventh Circuit has approved of dismissing a case based on dishonesty in a complaint.  In Rivera, the Court of Appeals reviewed a prisoner plaintiff's filing history for the purpose of determining whether prior cases counted as "strikes" under the PLRA and stated:

> The district court's dismissal without prejudice in Parker is equally, if not more, strike-worthy.  In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, Arocho.  As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]"

Rivera, 144 F.3d at 731; see also Sears v. Haas, 509 F. App'x 935, 936 (11th Cir. 2013) (affirming dismissal of complaint where prisoner plaintiff failed to accurately disclose previous litigation); Redmon v. Lake Cnty. Sheriff's Office, 414 F. App'x 221, 223, 226 (11th Cir. 2011) (affirming dismissal, after directing service of process, of amended

8

complaint raising claims that included denial of proper medical care and cruel and unusual punishment for placement in a "restraint chair" and thirty-seven days of solitary confinement upon discovering prisoner plaintiff failed to disclose one prior federal lawsuit); Young v. Sec'y Fla. Dep't of Corr., 380 F. App'x 939, 940-41 (11th Cir. 2010) (affirming dismissal of third amended complaint based on a plaintiff's failure to disclose prior cases on the court's complaint form); Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538368 (N.D. Fla. Mar. 21, 2012) (dismissing case alleging deliberate indifference to serious medical needs where plaintiff failed to disclose new case commenced in interim between filing original complaint and second amended complaint), *adopted by*, Alexander v. Salvador, No. 5:12cv15, 2012 WL 1538336 (N.D. Fla. May 2, 2012).

Indeed, "pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an IFP action if the court determines that the action is 'frivolous or malicious.'" Burrell v. Warden I, 857 F. App'x 624, 625 (11th Cir. 2021) (citing 28 U.S.C. § 1915(e)(2)(B)(i)).  "An action is malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under penalty of perjury, as such a complaint is an abuse of the judicial process." Id.  The practice of dismissing a case as a sanction for providing false information about prior filing history is also well established in the Southern District of Georgia.  See, e.g., Williamson v. Cnty. of Johnson, GA, CV 318-076 (S.D. Ga. Dec. 6, 2018); Brown v. Wright, CV 111-044 (S.D. Ga. June 17, 2011); Hood v. Tompkins, CV 605-094 (S.D. Ga. Oct. 31, 2005), *aff'd*, 197 F. App'x 818 (11th Cir. 2006).  As discussed above, Plaintiff's answers about the disposition of lawsuits and the existence of others were blatantly dishonest.  Accordingly, even if Plaintiff had stated a claim

9

upon which relief could be granted - which, as described in detail below, he has not - this case should be dismissed without prejudice as a sanction for the dishonesty.

> **3. Dismissal Is Also Warranted Because the Complaint Fails to State a Claim**
>
> **a. Plaintiff Fails to State a Viable Claim of Deliberate Indifference to His Medical Needs**

To state a claim for deliberate indifference to a serious medical needs, Plaintiff must allege: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*).

To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care

10

provided to the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Generally, Plaintiff states he received an inadequate amount of diet snacks because Defendants Mickens, Blue, and Champion used inmates to distribute the snacks, and those inmates would steal the snacks or the snacks would be delivered incorrectly. Plaintiff does not allege any specific defendant is responsible for failing to provide an adequate amount of glucose tablets. Plaintiff asked Defendants Harmon, Mickens, and Screws for help with the issue and alerted Defendants Philbin, Alston, Gray, Shelton, Wiggs, Dumas, Blue, and Champion of his problems and resulting injuries.

Plaintiff has not shown Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Prison staff recognized Plaintiff had hypoglycemia and needed a special diet, and they made accommodations for his dietary and medicinal needs. Plaintiff's issues arose from the process by which prison staff fulfilled those accommodations. At times

Plaintiff failed to receive the proper amount of glucose tablets and diet snacks. This ineffective distribution process might amount to negligence; however, mere negligence is not enough to sustain a claim for deliberate indifference to a serious medical need.

Plaintiff also disagrees with Defendant Johnson and Alston's medical decisions. Defendant Johnson, a dietitian, told Plaintiff she stopped prescribing Ensure drinks to Plaintiff because of his weight and dietary needs. (Id. ¶¶ 15-16.) Similarly, Defendant Gray reduced Plaintiff's daily allotment of glucose tablets from ten to three. While Plaintiff may believe he needs more diet snacks and glucose tablets than prescribed, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment does not support a claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*). That is, deliberate indifference cannot be shown simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . ."). "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).

Because Defendants' actions fall within their medical judgment and did not rise above

mere negligence, Plaintiff's Eighth Amendment claims for deliberate indifference to serious medical needs should be dismissed.

### b. Plaintiff Fails to State a Viable Retaliation Claim

Plaintiff asserts Defendants Alston, Gray, and Johnson intentionally denied him diet snacks, glucose tablets, and Ensure drinks in retaliation for Plaintiff filing lawsuits. Plaintiff also asserts Defendants Johnson and Paschal moved Plaintiff to medical in view of other inmates in retaliation for Plaintiff's letter to Defendant Johnson concerning diet snacks.

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "To prevail on a retaliation claim, an inmate must show that (1) he engaged in speech or conduct protected by the Constitution; (2) the defendant took action of such a nature that it 'would likely deter a person of ordinary firmness' from exercising that right; and (3) a causal connection exists between the protected activity and the retaliatory action." Id. at 762 (quoting Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005)); see also Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).

Additionally, a complaint must contain enough facts to state a claim of retaliation that is plausible on its face. Id. (citing Twombly, 550 U.S. at 554). A prisoner may state a cognizable § 1983 claim by alleging the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for

asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254.

Plaintiff fails to state a viable retaliation claim as he fails to satisfy the elements listed in Farrow. While filing a lawsuit or grievance is protected speech, writing profane letters likely is not. Regardless, even if the first element is met, Plaintiff's retaliation claims fail elements two and three. For the second element, Defendants' actions would not deter a prisoner from exercising the right to file a lawsuit or grievance. While Plaintiff suspects improper motive, he does not deny his Ensure and glucose tablet prescriptions were changed according to his dietary needs. It is also unclear how taking Plaintiff to medical deters protected speech, especially when the escort occurred after Plaintiff communicated his need for medical attention. Receiving proper or requested medical care is not a deterrent.

For the third element, Plaintiff alleges no causal connection between the protected activity and the retaliatory action. Overall, Plaintiff's claims of retaliation are entirely conclusory without any factual support and do not raise his allegations of retaliation beyond a speculative level. See Smith v. Florida Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*) (finding conclusory allegations of retaliatory motive insufficient to raise allegation of retaliation above speculative level) (citing Iqbal, 556 U.S. at 680). Plaintiff has no basis to claim filing a lawsuit against the Department of Corrections spurred any action by Defendants. Plaintiff does not allege Defendants were parties to, witnesses in, or otherwise affected by the litigation with the Department of Corrections. Nor does he allege any basis, aside from mere speculation, for his belief Defendants were motivated to act by the lawsuit

against the Department of Corrections. Thus, Plaintiff fails to state a retaliation claim against Defendants.

### c. Plaintiff Fails to State a Valid Claim against Defendant Ward

The Eleventh Circuit has held a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff alleges no facts regarding Defendant Ward who is only mentioned in Plaintiff's grievance history. (Doc. no. 10, pp. 2, 20.) Because Plaintiff alleges no facts regarding Defendant Ward, he fails to state a claim against him, and Defendant Ward should be dismissed.

### d. Plaintiff No Longer Brings Any Claims Against Defendants Kitchen, Jordan, Daniel, King, and Leverett

Plaintiff's amended complaint supersedes and replaces in its entirety the previous complaint. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016). Plaintiff named Defendants Kitchen and Jordan in his original complaint, (doc. no. 1, pp. 3-4), and named Defendants Daniel, King, and Leverett in his now withdrawn second amended complaint, (doc. no. 15, pp. 2-3; see doc. no. 22 (opening new civil action with Plaintiff's second amended complaint)). In the operative amended complaint, Plaintiff does not list Defendants Kitchen, Jordan, Daniel, King, or Leverett in the caption or the separate list of Defendants. (Doc. no. 10, pp. 1-7.) Plaintiff does not mention them in the statement of claim, nor does Plaintiff make any allegations associating them with a purported constitutional violation. (See doc. no. 10.)

15

Dismissal is therefore appropriate.  See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  Accordingly, Defendants Kitchen, Jordan, Daniel, King, and Leverett should be dismissed.

> e.   **Plaintiff's Remaining Claims are Improperly Joined Under Rule 20 and Fail to State a Claim**

Plaintiff's remaining claims involve multiple separate series of events.  In summary, Plaintiff claims the following: (1) his property was moved without him due to a plot between a Judge and Defendant Philbin; (2) Defendant Screws threatened violence against Plaintiff when Plaintiff filed a grievance; (3) Defendants Philbin and Paschall recklessly housed a prisoner whom Plaintiff fears; (4) Plaintiff faced a disciplinary report he disagrees with; and (5) Defendant Philbin denied Plaintiff's request for an electronic book reader based on an erroneous determination he did not qualify for it.

Plaintiff cannot bring unrelated claims in a single lawsuit under Fed. R. Civ. P. 20.  There are two requirements for joinder under Rule 20:  (1) all claims against joined defendants must arise out of "the same transaction or occurrence, or series of transactions or occurrences"; and (2) "there must be some question of law or fact common to all defendants that will arise in the action."  Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir.

2003) (*en banc*).). "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander, 207 F.3d at 1323. Under the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998); Tarver v. Owens, 5:14-CV-214, 2014 WL 3810594, at *4 (M.D. Ga. Aug. 1, 2014) (same). A logical relationship exists when the claims depend upon the same set of facts, or the facts of one claim "activate additional legal rights supporting the other claim." Smith, 728 F. Supp. 2d at 1319. A claim may be dismissed without prejudice where it does not comply with Rule 20. Smith v. Owens, 625 F. App'x 924, 928-29 (11th Cir. 2015.)

The only claims which bear some relation to each other are Plaintiff's claims for medical deliberate indifference and the connected acts of retaliation, which the Court discussed *supra*. Plaintiff's remaining claims bear no logical relationship to each other or the primary claims of deliberate indifference and retaliation. In addition to running afoul of Rule 20, these remaining allegations fail to state a claim because they describe general inconveniences of prison life rather than constitutional violations. Indeed, there is no constitutional violation when an inmate's property is moved but not taken, a prison guard makes mere verbal threats but takes no physical action, an inmate fears someone with whom he is housed, an inmate finds himself the respondent to a grievance with which he disagrees, or an inmate is denied access to an electronic book reader. To the extent Plaintiff claims retaliation in these contexts, those

17

claims fail for the same reasons as the retaliation claims discussed *supra*. For these reasons, the remaining, unrelated claims should be dismissed without prejudice.

## II.   CONCLUSION

Because Plaintiff abused the judicial process by providing dishonest information about his filing history and fails to state a claim upon which relief can be granted, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** without prejudice, and the pending motion be **DENIED AS MOOT,** (doc. no. 24).

SO REPORTED and RECOMMENDED this 12th day of October, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA